**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Armenta,<br><br>   Plaintiff,<br><br>v.<br><br>City of Goodyear, et al.,<br><br>   Defendants. | No. CV-19-05186-PHX-ROS<br><br>**ORDER** |

  Plaintiff Renee Armenta was driving with a revoked license when she was pulled over by Defendant Matthew Ross, a police officer for the City of Goodyear.  Upon being told she was under arrest, Armenta physically resisted being handcuffed.  During a struggle, Ross punched Armenta in her forehead and forced her to the ground, after which he dragged her a few feet on her stomach.  Armenta later filed this suit alleging Ross violated her constitutional rights and committed various state-law torts.  The facts viewed in the light most favorable to Armenta do not establish a violation of her constitutional rights.  Moreover, even if Armenta's constitutional rights were violated, Ross would be entitled to qualified immunity.  Armenta also lacks sufficient evidence supporting her state-law claims.  Accordingly, summary judgment will be granted in favor of Ross.

## BACKGROUND

  On September 6, 2018, Ross was driving a police vehicle in the parking lot of a convenience store when he noticed an individual, later identified as John Aguilar, standing in front of a silver car.  According to Ross, Aguilar "had tattoos up his neck and onto his

face" and "[h]e was wearing a baggy T-shirt and some shorts." (Doc. 56-1 at 10). Believing Aguilar looked "kind of out of place," Ross concluded Aguilar "possibly" was a gang member. (Doc. 56-1 at 10). Ross ran a license plate check for the silver car. Doing so also performed a "driver's license check of the [car's] registered owner." (Doc. 56-1 at 12). Based on those inquiries Ross learned the car was registered to Armenta and that Armenta's license had been revoked. (Doc. 56-1 at 13). Using the photograph on Armenta's license, Ross concluded Armenta was in the driver's seat. Aguilar entered the car and Armenta drove away from the convenience store.

Ross followed Armenta and Aguilar for a short distance before he pulled the car over based on Armenta's "revoked license status."[1] (Doc. 56-1 at 13). The next events are the entire basis of Armenta's suit and were recorded on Ross's body camera as well as an onlooker's cell phone. The parties provided a side-by-side video of those two recordings which establishes the following.

As Ross walked up to the driver's side of Armenta's vehicle, Armenta had already rolled down her window. Ross said "Hello. Renee, right?" to which Armenta responded "Yeah." Ross then ordered Armenta to "Step out of the car." Armenta stepped out of the car and Ross said "Turn around, put your hands behind your back." Armenta asked "What did I do?" and Ross stated "You're under arrest." Armenta asked "for what?" but Ross did not respond. Ross then grabbed Armenta's left wrist to place her in handcuffs but Armenta resisted. Ross told her "Hey, get your hands out" and Armenta asked again why she was being arrested. Armenta then attempted to pull her left arm away from Ross and a struggle ensued. Armenta tried to get her arm away from Ross and sit back down in her car while Ross was attempting to prevent that by pulling Armenta away from the open car door.

---

[1] During his deposition, Ross admitted he was not actually interested in Armenta driving without a license. Rather, Ross admitted he used the traffic stop as a "pretext[]" to speak with Aguilar. (Doc. 56-1 at 10). According to Ross, he had "profiled" Aguilar as a "gang member" and he wished to speak with Aguilar. (Doc. 56-1 at 13). It is undisputed, however, that Armenta was driving on a revoked license and that Ross knew that fact. In other words, it is undisputed there was a legally valid basis for stopping Armenta's vehicle. Ross's subjective motivation is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

After approximately two seconds of pulling, Ross punched Armenta in her forehead. After the punch, Armenta and Ross continued to struggle but Ross was able to force Armenta onto her stomach. Ross then dragged Armenta along the ground for a few feet. At the same time, Aguilar began exiting the passenger side of the vehicle, which prompted Ross to pull his weapon and yell at Aguilar to "Stay in the [expletive] car!" Aguilar did not obey. Instead, he exited the car and, after Ross shouted additional commands at him, Aguilar lay face down on the sidewalk. Ross handcuffed Armenta, other officers arrived, and Ross walked Armenta back to a police vehicle. Ross placed Armenta in the back seat of the police vehicle and attempted to close the door behind her. However, Armenta's foot was in the door sill such that it was pinched by the closing door and the door did not close. Armenta cried out in pain, pulled her foot inside, and Ross closed the door.

In August 2019, Armenta filed the current suit alleging Ross used excessive force in violation of her rights under the Fourth Amendment and that Ross's actions constituted the state-law torts of battery and intentional infliction of emotional distress.[2] Ross now seeks summary judgment on all claims.

**ANALYSIS**

"Summary judgment is proper where the movant shows, by citation to the record, that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021). Because Ross is seeking summary judgment, the Court must view the facts in the light most favorable to Armenta. *Id.* In doing so, however, the Court need not credit Armenta's version of events when they are contradicted by the video recordings of the incident.[3] *Id.*

---

[2] The complaint also alleged a racial discrimination claim, an assault claim, and claims against the City of Goodyear. None of these claims remain at issue. (Doc. 28; Doc. 53 at 1-2). In addition, Armenta's opposition to the motion for summary judgment argues "Defendants did not move for summary judgment as to Plaintiff's negligence claim so the argument is waived." (Doc. 55 at 17). Armenta did not assert any negligence-based claim nor does she explain what allegedly negligent actions Ross committed. Therefore, there is no negligence-based claim to address.

[3] At her deposition, Armenta stated she did not resist and she never attempted to "pull back from the police officer towards [her] car." (Doc. 56-2 at 7). Later, however, Armenta admitted she "pulled back a little." (Doc. 56-2 at 9). The video depicts the facts as recounted earlier. In particular, there can be no dispute Armenta expended significant effort in pulling back and attempting to break free from Ross's grip.

### I. Fourth Amendment Claim

"The central question in determining whether law enforcement officers violated the Fourth Amendment by using excessive force is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Andrews v. City of Henderson*, No. 20-17053, 2022 WL 1613618, at *3 (9th Cir. May 23, 2022). This "objective reasonableness" inquiry requires an evaluation of three factors: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.*

**A. Type and Amount of Force**

The first factor regarding the type and amount of force requires looking to "the specific factual circumstances of the case." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022). "The nature and degree of physical contact are relevant to this analysis, as are the risk of harm and the actual harm experienced." *Id.* The Ninth Circuit often classifies instances of force into categories such as "minimal," "intermediate," "significant," "substantial," "severe," or "deadly." *Andrews*, 2022 WL 1613618, at *5, *Williamson*, 23 F.4th at 1152; *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). These categories are not well defined, but based on existing caselaw, the actions in the present suit fall on the lower end of the spectrum.

Ross punched Armenta a single time in her head while struggling with her. Ross argues the punch was meant "to disrupt the biocomputer" to allow Ross to "gain a moment of advantage." (Doc. 54-1 at 35). Armenta does not present any contrary evidence and the video shows the punch was delivered in the context of Ross and Aguilar pulling each other. Thus, the punch was meant, primarily, as an attempt to distract Armenta. At the very least, the video shows the punch was not administered to a non-resisting individual simply to inflict harm. Finally, Ross claims the punch was "not meant to injure" but a punch of the

sort Ross used presents some risk of harm. (Doc. 54-1 at 35). This particular punch, however, was unlikely to result in serious injury and, in fact, did not result in serious injury as Armenta suffered only a slight contusion on her forehead.

After forcing Armenta to the ground, Ross dragged her a few feet on her stomach. As depicted in the video, the dragging is consistent with Ross's argument that he intended to pull Armenta away from the open car door to prevent her from reentering. Ross also asserts the dragging was to bring Armenta into a position such that the car was between Armenta and Ross on the street and Aguilar still in the vehicle. Armenta does not present any contrary evidence establishing the dragging had some other purpose, such as inflicting pain. And while dragging someone presents a risk of harm, that risk is small. Armenta does not argue or present evidence that she suffered significant injuries because of the dragging.

Neither the punching nor the dragging presented an objectively serious risk of significant harm and both resulted in only minor injuries. *See Williamson*, 23 F.4th at 1152 (finding "sprained wrist, mild swelling, and a torn rotator cuff" minor injuries). The specific factual circumstances show the punching and dragging were relatively minor uses of force.

**B. Governmental Interest**

The second factor when evaluating the reasonableness of force is the government's interest in the use of force. This factor requires evaluation of three subfactors: "(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Williamson*, 23 F.4th at 1153.

The crime at issue here was driving on a revoked license. That is a minor crime, meaning the government interest based on the severity of the crime was negligible. Next, there was no indication Armenta posed an immediate threat to Ross or other members of the public. She had pulled over without incident, willingly stepped out of her car, and there was no sign she had a weapon. Thus, the lack of an immediate threat means the government

interest in using force again was minimal.

The final subfactor involving resisting arrest is indisputable given the video. Armenta initially complied with Ross's command to exit the car but she immediately began actively resisting when told she was being arrested. *See Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010) (distinguishing between "active" and "passive" resistance). The video shows that, once Ross grabbed Armenta's wrist, she attempted to pull away. During the struggle, Armenta expends significant effort in trying to break free from Ross's hold. Once Armenta began actively resisting, Ross had little choice but to use some amount of force. Given Armenta's active resistance, the government interest in the use of force was substantial.

### C. Balance of Interests

The third factor requires weighing the "degree of force" against "the governmental interests at stake." *Andrews*, 2022 WL 1613618, at *6. The degree of force used in punching and dragging Armenta was minor while Armenta's physical resistance created a substantial governmental interest in the use of some force. Armenta's actions put Ross in the position of choosing between using force against her or simply allowing her to reenter her car. It was not unreasonable for Ross to use some amount of force to prevent Armenta from entering her car or reaching into her car. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("Neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force."). And it is "well-established that police officers are not required to use the least intrusive degree of force possible." *Williamson*, 23 F.4th at 1151. Viewed in the light most favorable to Armenta, the balance of interests does not establish the punching and dragging were objectively unreasonable. The Fourth Amendment claim fails.[4]

---

[4] Armenta's argument that Ross used excessive force in shutting the car door on her foot requires a different approach than the punching and dragging. Contrary to Armenta's summary judgment opposition, the video of Armenta being placed in the vehicle does not depict Ross "slamming" her foot in the door. (Doc. 55 at 2). Rather, the video shows Ross guide Armenta into the vehicle and then attempt to shut the door in a calm and deliberate manner. Armenta does not provide any evidence Ross knew her foot was in the door sill and, based on the video, Ross could not have seen Armenta's foot would be hit by the closing door. In other words, Ross shutting the door on Armenta's foot was an accident.

**D. Qualified Immunity**

"Qualified immunity shields government officials . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Rico v. Ducart*, 980 F.3d 1292, 1298 (9th Cir. 2020). While the Court has already concluded Armenta's Fourth Amendment claim cannot satisfy the first prong, her claim also fails because she cannot satisfy the second prong. That is, even if Ross's use of force was deemed excessive, Armenta needed to show existing precedent clearly established Ross's actions were unlawful.[5] *Id.* In making this showing, Armenta needed to "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504 (2019). The need for existing precedent to have addressed the specific situation "is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.*

Armenta does not cite to any existing precedent addressing a situation sufficiently similar to what Ross faced. Instead, Armenta cites to caselaw addressing strikingly different situations. For example, Armenta cites *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007). That case involved an officer punching the plaintiff but there was a dispute of fact whether the plaintiff was resisting arrest at the time of the punches. There is no dispute Armenta was resisting when she was punched. Armenta also cites *Davis v. City of Las Vegas*, 478 F.3d 1048, 1052 (9th Cir. 2007), which involved allegations an officer "slam[med] the handcuffed [plaintiff] head-first into a wall several times" and "punch[ed] him in the face while he was immobilized on the ground." Armenta was not slammed into a wall and Armenta was punched before she was handcuffed, that punch was

---

The Fourth Amendment does not apply to such an accidental application of force. *See, e.g.*, *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (noting Fourth Amendment applies to officer conduct when it involves "*means intentionally applied*" and not accidents).

[5] The second prong can also be met in "the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 504, 202 L. Ed. 2d 455 (2019). The video does not depict a "rare obvious case" of patently unconstitutional force.

when Ross was attempting to gain control over her.  Finally, Armenta cites *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011).  That case involved allegations an officer pepper sprayed the plaintiff without warning and then beat the plaintiff with a baton.  *Id.* at 1160.  Those actions bear no resemblance to Ross's actions in this case.

To overcome Armenta's undisputed active resistance, Ross delivered a single punch to Armenta's head.  Once Armenta was on the ground, Ross dragged her a few feet away from the open car door such that the car was between Ross and Aguilar.  Armenta has not cited any authority finding sufficiently similar conduct violated the Fourth Amendment.  Therefore, the second prong of the qualified immunity analysis also requires judgment in favor of Ross on the Fourth Amendment claim.

**II.     State Law Claims**

Armenta asserted state-law tort claims for battery and intentional infliction of emotional distress.  Armenta concedes her "battery claim is analyzed using the same excessive force standard [as the] Fourth Amendment."  (Doc. 55 at 17).  Because Armenta's Fourth Amendment claim fails, her battery claim also fails.  As for the intentional infliction of emotional distress claim, Arizona law requires the underlying actions be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency" such that they would "be regarded as atrocious and utterly intolerable in a civilized community."  *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995).  It was not outrageous and extreme for Ross to punch and drag Armenta in connection with her actively resisting a valid arrest, particularly because the level of force used was constitutionally permissible.  Ross is entitled to summary judgment on both of Armenta's state-law claims.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 53) is **GRANTED**.  The Clerk of Court shall enter judgment in favor of Defendants on all claims.

…

…

1 **IT IS FURTHER ORDERED** the Motion for Order to Manually File (Doc. 57) is
2 **GRANTED**.
3     Dated this 14th day of June, 2022.

```
                                    Honorable Roslyn O. Silver
                                    Senior United States District Judge
```